# 𝕴𝕹 𝕿𝕳𝕰 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 20-1385

Filed: March 11, 2021[*]

---

**COLONNA'S SHIPYARD, INC.,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant.*

---

*Yuki Haraguchi*, Holmes Pittman & Haraguchi, LLP, Chester, MD, for the plaintiff; *Chidinma Okogbue*, Holmes Pittman & Haraguchi, LLP, Chester, MD, of counsel.

*Amanda L. Tantum*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant; *James M. Metcalfe*, Counsel, and *W. Ryan James*, Assistant Counsel, Norfolk Naval Shipyard, Norfolk, VA, of counsel.

## AMENDED MEMORANDUM OPINION

### *HERTLING*, Judge

In this post-award bid protest, the plaintiff, Colonna's Shipyard, Inc. ("Colonna's"), challenges the award of a contract to overhaul and inspect a 100-ton floating crane barge located at the Norfolk Naval Shipyard to the awardee, Lyon Shipyard, Inc. ("Lyon"). The plaintiff contends that the defendant, the United States, acting through the Department of the Navy ("Navy"), conducted its review of proposals in a manner that was arbitrary and capricious and violated the covenant of good faith and fair dealing. Colonna's petitions this Court to set aside the award to Lyon and have the Navy conduct anew the procurement. The plaintiff also seeks to recover its bid preparation and proposal costs.

---

[*] This memorandum opinion was filed under seal on February 17, 2021, and the parties were directed to propose redactions by March 5, 2021. On March 4, 2021, the Court *sua sponte* amended the memorandum opinion to account for a decision of the Court of Appeals for the Federal Circuit issued that date and directed the parties to file proposed redactions to the amended memorandum opinion by March 10, 2021. The parties did not propose any redactions but did propose the correction of a typographical error. The Court hereby releases publicly the amended memorandum opinion of March 4 in full, with the typographical error noted by the parties corrected.

The parties have cross-moved for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). The defendant has also moved to dismiss, under RCFC 12(b)(1), the portion of the plaintiff's claims alleging that the Navy breached an implied contract of good faith and fair dealing.

The Court grants the defendant's cross-motion for judgment on the administrative record, denies the defendant's motion to dismiss, and denies the plaintiff's cross-motion.

## I.    BACKGROUND

The Navy sought inspection and repair of a 175-foot long, 100-ton floating crane barge, Barge YD 257. In January 2020, the Navy undertook market research to identify contractors with experience in ship repair. (AR 1.)[1] It contacted two potential contractors: Lyon and Fairlead Boatworks, Inc., to gauge preliminarily their capability and availability to complete the anticipated work on YD 257. (AR 17.) The Navy also issued a Sources Sought Notice as part of its market research. (AR 1.) Two contractors responded to the Sources Sought Notice and highlighted their ability to perform the work: Colonna's and Lyon, both small businesses. (AR 3-12.) Based on the market research, the contracting officer recommended issuing the solicitation "as [a] 100% Total Small Business set-aside." (AR 18.) The Navy also initially determined that it would award a firm fixed-price contract under Part 12 of the Federal Acquisition Regulations ("FAR"), related to acquisition of commercial items, and the Simplified Acquisition Procedures ("SAP") of FAR Subpart 13.5. (AR 24.)

On March 27, 2020, the Navy issued a request for proposals ("RFP") for Solicitation No. N4215820QS031, Overhaul and Inspection Services of Barge YD 257. (AR 35-38; *see* 39-195.) The Statement of Work required offerors to furnish their own docking facility, equipment, and personnel to perform inspections, replace and improve parts, and dispose of waste.[2] (AR 174, 887.) The anticipated period of performance was May 11, 2020 to September 25, 2020 (AR 30, 36); the Navy later issued Amendment 2 to the RFP altering the performance period to June 25, 2020 to November 9, 2020 (AR 198). The Navy conducted an Independent Government

---

[1] Citations to the administrative record (ECF 15, as amended by ECF 31) are denoted as "AR" with the pagination reflected in ECF 15 and 31.

[2] As set forth in the Sources Sought Notice, the services required included:

> managing and disposing all hazardous wastes, underwater hull and freeboard, void, main deck, main deck vehicle lashing socket, watertight hatch, bumper, handrail assembly removal, exterior nonskid and deck preservation, hull zinc anode, barge towing service, cleaning and pumping, provide Government office space without computer, drydock, fleet and undock . . . .

(AR 1.)

Estimate of the total cost of the work to be performed and estimated a cost of $2,407,962.46. (AR 13-15.)

In response to its RFP, the Navy received two proposals. Colonna's submitted a bid of $3,949,540.40 (AR 295), and Lyon submitted an initial bid of $4,558,140.00 (AR 351). Because both bids exceeded the Independent Government Estimate, the Navy requested that the two offerors reevaluate their proposed costs and submit new price bids. (AR 353-57.) Lyon offered a new bid price of $4,498,100.00, a reduction of $60,000 from its initial offer. (AR 363-66.) Colonna's indicated it could lower its price if the Navy was willing to discuss changes to the Statement of Work. (AR 360.) The Navy did not change the Statement of Work, and Colonna's maintained its original bid price. (AR 358-62.)

## A.      Evaluation Criteria

The RFP provided that the Navy would evaluate proposals based on three main factors— Past Performance, Technical Capability, and Cost/Price—in addition to various subfactors, in order to compare offerors "in terms of their ability to meet or exceed the Government's requirements stated in the Statement of Work." (AR 56-57.)

In analyzing these factors, the Navy determined that it would use a "best-value tradeoff" analysis to evaluate the offers. It specified in the RFP that:

> Award will be made to the Offeror whose proposal demonstrates the best overall value to the Government based on the factors and subfactors described herein . . . . In making this decision, the Government is more concerned with obtaining offers using the following factors in descending order of importance: 1) Past Performance, 2) Technical Capability and 3) Cost/Price. Past Performance is more important than Technical Capability; however, when combined are significantly more important than Cost/Price.

(AR 56.)

The RFP further specified the method by which the Navy would differentiate between offerors' proposals:

> If one Offeror has both the better Past Performance and Technical Capability and the lower Cost/Price, then that Offer will be the better value. If one Offeror has the better Past Performance and Technical Capability and a higher Cost/Price, the Government will decide whether the difference in Past Performance and Technical Capability is worth the difference in Cost/Price. If it is determined that the difference in Past Performance and Technical Capability is worth the difference in Cost/Price, then the more capable, higher-priced Offeror will be the better value.

(*Id.*)

3

### B.    Navy's Evaluation of Offerors' Proposals

To evaluate the two proposals, the Navy assembled a technical team comprised of two evaluators.  The evaluators each completed an evaluation worksheet and provided an adjectival rating for the Past Performance and Technical Capability factors and subfactors based on the strengths and weaknesses of each proposal.  (AR 57.)  Cost was not assigned an adjectival rating. (*Id.*)

### 1.    Past Performance Evaluation

#### a.    Method

The Navy's Past Performance evaluation consisted of two elements: (1) relevancy and (2) a performance-confidence assessment.  (AR 57-58.)

For relevancy, the Navy assessed whether a contractor's prior work experience was similar in scope and magnitude to the requirements of the solicitation.  (*Id.*)  The Navy established that it would base its determination on "information provided by the Offeror, information obtained from questionnaires tailored to the circumstances of the acquisition, or any other source available to the Government."[3]  (AR 57.)  A higher relevancy score would indicate a stronger likelihood of success on similar projects in the future.  (*Id.*)

For the performance-confidence assessment, the Navy determined "the likelihood (or Government's confidence) that the Offeror will successfully perform the [Statement of Work's] requirements," ultimately arriving at a qualitative, adjectival score.  (AR 58.)  The score represented "how well the contractor performed on [past] contracts."  (*Id.*)

Based on the relevancy and performance-confidence assessment scores, the Navy assigned an overall rating of Past Performance as either "Acceptable," *i.e.*, the "Government has a reasonable expectation that the Offeror will successfully perform the required effort," or "Unacceptable."  (AR 59.)

#### b.    Determination

Both evaluators found that Colonna's had "Relevant" experience based on its completion of a prior overhaul and inspection contract, Contract No. N4215819PS075, for Barge YC 1671. (AR 23, 370.)  Despite Colonna's relevant experience, both evaluators raised concerns regarding the performance-confidence assessment and overall Past Performance.

---

[3] The RFP specified that "[o]ther sources include, but are not limited to, the Contractor Performance Assessment Reporting System (CPARS), Past Performance Information Retrieval System (PPIRS), . . . or other databases; interviews with Program Managers, Contracting Officers, and Cost/Price Determining Officials; and the Defense Contract Management Agency." (AR 57.)

The narrative statement of Evaluator 1's performance evaluation provided in full:

> Colonna's past performance on YC 1671 was unacceptable due to poor workmanship from the subcontractor[ ] that was welding and painting the voids. Colonna's was told on several occasion [sic] to bring in a better subcontractor company but they refused and caused several delays.

(AR 379.)  Evaluator 1 provided a performance-confidence assessment rating of "No Confidence" and an overall Past Performance rating of "Unacceptable" despite "Relevant" past performance history.  (AR 376-78.)

The narrative statement of Evaluator 2's performance evaluation provided in full:

> Past performance shows a history of being able to complete availabilities with relative communication in regards to [Condition Found Reports]. Concerns are raised based on inability to maintain original schedule and budgets and additional findings such as safety violations. Overall, Colonna's [sic] has the capability to perform the work as prescribed for YD-257 but is not the first choice.

(AR 373.)  Evaluator 2 rated Colonna's overall Past Performance as "Acceptable" with a performance-confidence assessment rating of "Limited Confidence."  (AR 370.)

## 2.    Technical Capability

The Navy considered the offerors' Technical Capability and a technical approach subfactor that was meant to "assess the Offeror's proposed approach to satisfy the Government's requirements."  (AR 60.)  The Technical Capability factor ascertained whether the offeror had the "[k]nowledge, capabilities, and experience" to perform the tasks required.  (AR 61.)

Evaluator 2 provided the following narrative statement on the evaluator worksheet for Colonna's technical capability:

> Colonna's [sic] does possess the technical capability to perform the work as prescribed in the YD-257 however, concerns are raised especially on Pg. 16 of their Technical Capability packet.  They referenced Dry Dock MIL-STD 1625 C, this instruction and the requirements contained within it have been outdated since 2009.  Aside from that the remaining justification appears to coincide that they are technically capable.

(AR 373.)  He expressed concern that Colonna's docking facility was out of date.  Colonna's represented in its proposal that its docking facility was a "Certified Dry Dock to Mil-Standard 1625C."  (AR 786.)  The current certification standard, which Colonna's meets, is MIL-STD 1625D.  Colonna's asserts that its offer's reference to "1625C" instead of "1625D" was a typographical error.  Notwithstanding this error, and his concern regarding whether Colonna's

met the current certification standard, Evaluator 2 provided Colonna's an "Acceptable" Technical Capability rating.  (AR 373.)

Evaluator 1 assigned an "Unacceptable" Technical Capability rating to Colonna's.  (AR 379.)  His worksheet provides in full: "Colonna's is capable for somethings [sic] but I feel they are not capable of giving the government quality work."  (*Id.*)

The Navy compiled each of the evaluators' scores for Past Performance and Technical Capability and, using a consensus approach, rated Colonna's overall Past Performance as "Acceptable" and Technical Capability as "Acceptable."  (AR 383.)  The Navy rated Lyon "Good" and "Acceptable," respectively.  (*Id.*)

## C.    Overall Findings: Pre-Award Documentation Form

Based on the evaluator worksheets completed by the technical team, the Navy's market research, and other information available, the technical team and contracting officer produced a final evaluation documented in the SAP 13.5 Pre-Award Documentation Form ("PADF").  (AR 395-411.)  The PADF listed the adjectival scores for both offerors and offered several paragraphs comparing Lyon and Colonna's on Past Performance and Technical Capability.  (AR 403-06.)

The PADF noted, in part, that Lyon was knowledgeable, had completed prior projects on schedule, and had demonstrated a commitment to safety.  (AR 403.)  The PADF highlighted for Colonna's a letter of concern the Navy had issued to Colonna's in December 2019 based on its work on Barge YC 1671.  (AR 902.)  In the letter, the contracting officer explained that "[d]espite several meetings conducted to discuss Inspection and Repairs (e.g., dents on the Main Deck needing to be cut out and repaired, etc.) needed to be accomplished, these were not done; thus, causing major delays in completing other work specifications . . . ."  (*Id.*)  The letter of concern instructed Colonna's to implement a corrective action plan to remedy delays and accomplish all required work.  (*Id.*)

The PADF favorably rated Colonna's approach and understanding of the requirements and found its price to be fair and reasonable.  (AR 406-07.)  On balance, however, based on the letter of concern, the evaluators' personal knowledge of Colonna's prior work, and the outdated dry dock certification, the PADF reflected the Navy's caution.

The Navy assigned the following adjectival final scores and proposed costs as:

|  | **Colonna's** | **Lyon** |
|---|---|---|
| **Overall Past Performance:** | Acceptable | Acceptable |
| **Past Performance: Relevancy** | Relevant | Very Relevant |
| **Past Performance: Confidence-Assessment Ratings** | Limited Confidence | Substantial Confidence |
| **Technical** | Acceptable | Good |
| **Cost** | $3,949,540.40 | $4,498,100.00 |

**Scale:** Overall Past Performance: Acceptable; Unacceptable. Relevancy: Very Relevant; Relevant; Somewhat Relevant; Not Relevant. Confidence: Substantial Confidence; Satisfactory Confidence; Limited Confidence; No Confidence; Unknown Confidence. Technical: Outstanding; Good; Acceptable; Marginal; Unacceptable.

(AR 383, 395-411.)

The Navy ultimately determined that Lyon's proposal presented a better value:

> Although Lyon's proposed Cost/Price is higher than Colonna's, Lyon received better ratings for their Past Performance and Technical Capability. Lyon's far better ratings than Colonna's are indicative that Lyon is significantly more capable of successfully fulfilling this requirement. Based [on this,] Lyon's proposal has been determined to be the better value for the Government.

(AR 407.) Based on a best-value tradeoff and analysis, the PADF recommended award be made to Lyon. (AR 409-411.)

**D.   Contract Award to Lyon**

On June 23, 2020, the Navy awarded the contract to Lyon. (AR 412.) Around June 30, the plaintiff became aware of this award by chance and contacted the Navy for confirmation. (AR 538.) The Navy subsequently posted notice of its award on SAM.gov. (AR 539.)

Colonna's sought debriefing of the award. In response, the Navy provided the following explanation via email:

> Based from the review of Colonna's proposal, Colonna's Past Performance showed a history of being able to complete availabilities with relative communication in regards to Condition Found Report (CFRs) but there had been concerns raised due to Colonna's inability to maintain original schedule, budgets and additional findings such as a safety violation(s). A Letter of Concern

7

was also issued to Colonna's on 20 December 2019 due to undue delays.

For Colonna's Technical Capability, even though Colonna's may possess the technical capability to perform the work as prescribed in the solicitation; however, concerns were raised specifically on page 16 of their Technical Capability Packet proposal. Colonna's referenced Dry Dock MIL-STD 1625 C that contained instruction and requirements that had been outdated since 2009.

(AR 543-44.)

### E.     Colonna's Protest

On July 7, 2020, Colonna's filed a protest at the U.S. Government Accountability Office ("GAO"). (AR 549.) Work on the contract was suspended during the GAO's review of Colonna's protest. (AR 866.) The GAO dismissed Colonna's protest on September 29, 2020. (AR 886.)

The plaintiff filed a post-award bid protest in this court on October 13, 2020. Count I of its complaint alleges that the Navy acted in an arbitrary or capricious manner in awarding the contract to Lyon. Count II alleges that the Navy breached an implied contract of fair dealing or acted in bad faith in its evaluation and award process.

Following the filing of the administrative record, the plaintiff moved to supplement the administrative record. The Court granted, in part, the motion to supplement the administrative record with an email documenting the Navy's correction of an outdated Contractor Performance Assessment Report ("CPAR") and the revised CPAR for a prior contract on which Colonna's had worked.[4] (ECF 27.)

---

[4] As the Court provided in its December 23, 2020 Order (ECF 27) granting in part the plaintiff's motion to supplement the administrative record:

> The revised CPAR, dated June 17, 2020 (ECF 23-4), and the e-mail from [the Navy official], dated June 22, 2020 (ECF 23-3, bottom of page 1 to top of page 2) reflect affirmative decisions by the Navy prior to the final award of the contract at issue in this case to delete, in one instance, and revise, in a second instance, adverse CPARs. These two decisions are sufficiently "close at hand" to warrant inclusion in the administrative record. They reflect actual decisions by the Navy regarding the plaintiff's prior performance and may be relevant to an evaluation of the plaintiff's proposal for the contract

The parties have cross-moved for judgment on the administrative record.  The defendant has also moved to dismiss Count II of the plaintiff's complaint.  The matter has been fully briefed, and the Court heard oral argument on February 9, 2021.

## II.   JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over bid protests pursuant to 28 U.S.C. § 1491(b).  *See, e.g.*, *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  Section 1491(b) grants this court jurisdiction to resolve the plaintiff's complaint.

On a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court accepts as true all well-pleaded allegations in the complaint.  The plaintiff bears the burden of demonstrating that the Court has jurisdiction over the claim.  *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

On a motion for judgment on the administrative record pursuant to RCFC 52.1, the court limits its review to the administrative record before it and makes findings of fact as if it were conducting a trial on a paper record.  *Bannum, Inc.*, 404 F.3d at 1354.  Unlike a motion for summary judgment under RCFC 56, issues of material fact will not foreclose judgment on the administrative record.  *Id.* at 1356.  The court determines whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *Integral Consulting Servs., Inc. v. United States*, 140 Fed. Cl. 653, 657 (2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)).

The court evaluates bid protest actions under the Administrative Procedure Act ("APA") standard of review.  An agency procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706(2)(A)).  Relief may only be granted upon the finding that "the procurement official's decision lacked a rational basis."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001).  The court's review of a procuring agency's decision is "highly deferential."  *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

For a plaintiff to prevail in a post-award protest, it must show not only an "error in the procurement process, but also that the error prejudiced it."  *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).  A plaintiff establishes prejudice by showing that "there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."  *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

---

at issue. Therefore, the Court determines that this e-mail and the revised CPAR are necessary to ensure meaningful review of the plaintiff's claim.

## III.    DISCUSSION

The defendant challenges the court's subject matter jurisdiction over a portion of Count II of the plaintiff's complaint.  Accordingly, the Court first considers whether it has jurisdiction over the plaintiff's allegation regarding breach of an implied contract of fair dealing before resolving the plaintiff's claims on the merits.

### A.    Jurisdiction: Breach of an Implied Contract of Fair Dealing

Count II of the plaintiff's two-count complaint alleges that the Navy breached an implied contract of fair dealing or acted in bad faith in evaluating the plaintiff's bid.  The defendant has moved to dismiss, for lack of subject matter jurisdiction, the portion of the plaintiff's allegation that relies on the legal theory of an implied contract.

After the parties submitted their briefs in this case and the Court heard oral argument and issued its initial opinion, the Federal Circuit issued an opinion resolving this issue in the plaintiff's favor.  In *Safeguard Base Operations, LLC v. United States*, ___ F.3d ___, ___, No. 19-2261, slip op. at 22 (Fed. Cir. Mar. 4, 2021), the Court of Appeals specifically held that the Court of Federal Claims "has jurisdiction over implied-in-fact contract claims under § 1491(b)(1) and only under § 1491(b)(1)."  Accordingly, the defendant's motion to dismiss the relevant allegations of Count II of the complaint pursuant to RCFC 12(b)(1) is denied.

The Court will address the merits of Count II of the complaint under the relevant legal standard in Part III.C, *infra*.

### B.    Count I: Arbitrary and Capricious Award

The plaintiff's first count invokes the court's bid protest jurisdiction under 28 U.S.C. § 1491(b), arguing that the Navy acted in an arbitrary and capricious manner in reviewing submitted bids.  The Court first addresses the plaintiff's challenge to the Navy's use of simplified acquisition procedures before reviewing the Navy's evaluation procedure, discussions with potential offerors, and documentation of its best-value tradeoff.

#### 1.    Simplified Acquisition Procedures

The Navy conducted its procurement under the simplified acquisition procedures of FAR Part 13.  Given that FAR Part 13 provides a procurement mechanism that reduces an agency's procedural requirements for reviewing offerors' proposals for the acquisition of commercial goods and services, the Court first considers whether the Navy justifiably and properly used SAP for the solicitation at issue.

FAR Subpart 13.5 authorizes the use of simplified procedures "for the acquisition of supplies and services in amounts greater than the simplified acquisition threshold but not exceeding $7.5 million."  FAR 13.500; *see also* FAR 13.003(g).  Part 13.500(a) specifies that "[c]ontracting officers may use any simplified acquisition procedure in this part," with the goal of facilitating procurements so they may be "solicited, offered, evaluated, and awarded in a simplified manner that maximizes efficiency and economy and minimizes burden and

administrative costs for both the Government and industry." FAR 13.500(a).  FAR Part 12, related to the acquisition of commercial items and services, applies to procurements under FAR Subpart 13.5.

In considering whether to use SAP, the Navy first determined through market research that the services it required were "of a type offered and sold competitively in the commercial marketplace."  (AR 17.)  It identified at least four potential small-business vendors offering suitable services.  (*Id.*)  Having made such a determination in accordance with FAR Part 10, the Navy ultimately concluded that it would "award a Firm-Fixed-Price contract utilizing policies and procedures outlined in FAR Part 12 . . . and FAR Subpart 13.5."  (AR 24.)

The Court finds that the Navy had reasonable grounds to use SAP for this procurement. To the extent the Navy's determination of the procurement's eligibility for SAP relies on its market research, the Court finds that it conducted a reasonable appraisal of available vendors and determined that the requirements for a procurement under SAP had been met.  The plaintiff's suggestion that SAP permitted the defendant to forego a thorough review of its proposal more easily is baseless; it ignores the FAR's own mandate that agencies employ SAP whenever possible to increase efficiency for the government and offerors alike.  *See* FAR 13.500(a).

In addition to challenging the use of SAP, the plaintiff challenges the Navy's notice, or lack thereof, to offerors that their proposals would be evaluated under SAP.  The plaintiff notes that "[n]either the Sources Sought Notice nor the Solicitation posting indicated the SAP nature of the procurement."  (ECF 24 at 14.)

The FAR provides little guidance on notice requirements for acquisitions under Subpart 13.5.  Nothing in the text of FAR Part 13 explicitly obligates an agency to put offerors on notice that it will conduct its procurement under SAP.

The plaintiff cites *Dubinsky v. United States*, 43 Fed. Cl. 243, 245, *appeal dismissed*, 215 F.3d 1350 (Fed. Cir. 1999), for the proposition that an agency must inform offerors that it is using SAP under FAR Subpart 13.5.  In *Dubinsky*, the plaintiff challenged an Air Force procurement of electronic scoreboards for the Air Force Academy Stadium.  The Air Force maintained the position that the procurement was conducted under FAR Part 15 until an evidentiary hearing—two days before oral argument on a motion for summary judgment—at which it contended, for the first time, that the procurement had been conducted pursuant to FAR Part 13.  *Id.*  The court found that the procurement had not been conducted under SAP; even if it had been, Judge Bruggink determined that he would still evaluate the Air Force's conduct under FAR Part 15 because of the Air Force's lack of notice that the procurement was being conducted under FAR Part 13.  *Id.* at 259.  Judge Bruggink noted that "making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition." *Id.*

The case at hand presents none of the distinctive circumstances in *Dubinsky*.  There, the Air Force explicitly documented in writing that the solicitation was issued using FAR Parts 12 and 15 procedures; FAR Part 13 was never mentioned.  *Id.*  In this case, the Sources Sought Notice provided no information on the type of procurement the Navy anticipated; it referred to

neither FAR Part 13 nor FAR Part 15.  (AR 1-2.)  It makes no affirmative statement as to the type of acquisition the agency intended.  The RFP makes passing reference to Part 15; a procurement under SAP, however, may incorporate elements of Part 15 at the discretion of the contracting officer.  FAR 13.106-2(b) ("At the contracting officer's discretion, one or more, but not necessarily all, of evaluation procedures in part 14 or 15 may be used.").  Thus, neither the Sources Sought Notice nor the solicitation can be read to induce offerors to conclude that FAR Part 15 would control.

The record in this case also documents that the Navy intended to pursue SAP from the start.  (AR 24.)  While the Court recognizes that the agency's internal documentation differs from the materials made available to offerors at the time of the solicitation and does not necessarily provide notice to offerors, the record nevertheless indicates the Navy's intentions to use SAP.  (*Id.*)  In *Dubinsky*, the record offered no such indication; indeed, in *Dubinsky*, the late-noted reliance on FAR Part 13 appeared to have been a litigation tactic rather than an element of the procurement.  *See Dubinsky*, 43 Fed. Cl. at 255.

The Navy in this case met the special notice requirements of FAR 13.501(b), and the record reflects efforts to adhere to Part 13, rather than Part 15, procedures.  *Cf. id.* (noting that the agency did not abide by FAR 13.501(b)).  Another distinction is that, at the time *Dubinsky* was decided, SAP was a relatively new procedure, having been authorized only in 1997 as a three-year "test program."  *See id.* at 254.  Today, procurements using SAP are a well-established aspect of the FAR.  As the defendant argues, the procurement at issue involved the acquisition of commercial services within the threshold for which the use of SAP is authorized.  The plaintiff ought to have been operating on the premise that SAP would be applied.  This context itself is a signal distinction between this case and *Dubinsky*.

The Court finds that the Navy met its procedural burden under FAR Part 13 and did not change the "rules of the game" during its procurement, as the Air Force did in *Dubinsky*, in a manner that would justify requiring that the agency provide express advance notice of its intent to rely on SAP.

Beyond these distinctions with *Dubinsky*, the plaintiff cannot demonstrate that the lack notice of the SAP procurement prejudiced it.  The plaintiff has provided no argument or evidence that such knowledge would have increased its likelihood of winning the contract; Lyon, too, lacked such notice, negating any claim of unequal treatment.  Colonna's fails to satisfy the but-for test.  *See Bannum*, 404 F.3d at 1354 (explaining that to demonstrate prejudice the plaintiff must show that it had a substantial chance of receiving the contract "but for the errors" committed by the agency); *see also Seaborn Health Care, Inc. v. United States*, 55 Fed. Cl. 520, 525 (2003) (observing that the "plaintiff does not specify how it was prejudiced by the [agency's] failure to disclose its reliance on Part 13 authority or to follow any FAR Part 15 and 17 requirements . . . .").

The Court agrees with the plaintiff that an agency's use of SAP does not exempt agencies from encouraging competition or providing a reasoned, impartial review of offerors' proposals.  *See* FAR 13.104; 13.106-2; 13.501(b).  In this case, however, as will be explained, the Navy satisfied its obligation by conducting a reasonable review of Colonna's proposal under SAP.

The FAR contains no requirement that an agency notify offerors that it intends to make an award pursuant to SAP, the record reflects that the Navy intended to use SAP from an early stage of this procurement, and the plaintiff presents no evidence showing it was prejudiced from its use. The Court therefore rejects the plaintiff's challenge to the Navy's use of simplified acquisition procedures.

### 2.      Evaluation of Offerors' Proposals

The Court next considers the plaintiff's challenge to the Navy's evaluation and scoring of its proposal. The Court looks to the administrative record to determine whether the award to Lyon was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A). Relief may be granted only when "the procurement official's decision lacked a rational basis." *Impresa*, 238 F.3d at 1338. The agency's violation of a statute, regulation, or procedure must be "clear and prejudicial" for a plaintiff to prevail. *Id.* at 1333.

### a.      Past Performance

The plaintiff challenges the Navy's Past Performance evaluation. Components of an agency's Past Performance evaluation, such as relevance, are discretionary determinations entitled to deference. *See Glenn Defense Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 911 (Fed. Cir. 2013), citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). As provided in FAR Part 13, when an agency uses SAP to procure commercial items or services, its evaluation of offerors' Past Performance may be based on one or more criteria:

> (A) The contracting officer's knowledge of and previous experience with the supply or service being acquired;
>
> (B) Customer surveys, and past performance questionnaire replies;
>
> (C) The Contractor Performance Assessment Reporting System (CPARS) at https://www.cpars.gov; or
>
> (D) Any other reasonable basis.

FAR 13.106-2(b)(3)(ii).

The plaintiff challenges the Navy's evaluation as reflected in the evaluation worksheets that were completed by the technical team and in the PADF. First, the plaintiff challenges the generality of the evaluators' narrative statements and the lack of a specific basis for their ratings. As noted above, Evaluator 1 gave the plaintiff a "No Confidence" performance-confidence assessment rating and "Unacceptable" Past Performance rating overall, and Evaluator 2 rated the plaintiff "Limited Confidence" in his performance-confidence assessment and "Acceptable" for overall Past Performance. (AR 371-78.) The plaintiff asserts that "there is almost no information in the record that adequately explains how the evaluators came to such disparate grades." (ECF 24 at 19.)

13

The Court finds that, contrary to the plaintiff's assertion, the record provides a sufficient basis for the Navy's Past Performance evaluation.  The December 2019 letter of concern stemming from Colonna's work on Barge YC 1671, a project involving similar inspection and overhaul services, provided useful, relevant, objective evidence of the plaintiff's performance. (AR 902.)  The letter of concern indicated that Colonna's work caused delays and adversely affected the period of performance.  (*Id.*)

The contracting officer and technical team also gained personal familiarity with Colonna's work through prior contracts and were entitled to use this experience in assessing the likelihood of satisfactory future performance.  *See* FAR 13.106-2(b)(3)(ii)(A).  Given the performance issues demarcated in the letter and the evaluators' own experience, they had a reasonable basis for their rankings of Colonna's past performance.  That the evaluators came to somewhat different ratings does not alter the reasonableness of the basis upon which each evaluator made his decision.  Each evaluator was entitled to form a reasoned opinion based on the available information before him, and the record before the Court presents sufficient evidence to support the evaluators' ratings.  *See E.W. Bliss*, 77 F.3d at 449 (noting that the minutiae of the procurement process, such as technical ratings, are discretionary determinations that the court will not second guess).

The plaintiff also asserts that the Navy incorrectly relied on two CPARS when making its determination.  First, Colonna's maintains that the Navy relied on an outdated version of a CPAR related to the MTS-711 Hull Demilitarization Project that the Navy later revised to improve Colonna's rating.  The initial version of the CPAR included a conclusion that the rating official "would not recommend" Colonna's for work in the future.  The revised CPAR includes a statement by a Navy representative attesting that "[g]iven what I know today about the contractor's ability to perform in accordance with this contract or order's most significant requirements, I would recommend them for similar requirements in the future."  (ECF 23-4 at 2.) Second, Colonna's suggests that the Navy relied on a CPAR related to its work on YC 1671 that the Navy decided to delete.

The Court admitted into the administrative record the revised CPAR because it provides relevant evidence of an improved rating of the plaintiff's performance.  (ECF 27.)  Nevertheless, the Court disagrees with the plaintiff's assertion that the defendant erroneously relied on either CPAR in its evaluation of Colonna's offer in this procurement.  There is no evidence that either evaluator based his adjectival rating on the deleted or outdated CPAR.  The plaintiff cites to Evaluator 1's narrative statement that "Colonna's past performance on YC 1671 was unacceptable due to poor workmanship," noting that he "cites to no other CPAR or past performance history despite Plaintiff providing ample evidence of its quality past performance history in its proposal."  (ECF 24 at 18.)

The evaluators had personal knowledge of Colonna's work from prior contracts and could rely on multiple sources of familiarity with the plaintiff's work, including both the work on MTS-711 and on YC 1671, regardless of whether the method by which the evaluators knew of the plaintiff's work quality was specifically identified in the evaluator's narrative statement.  *See* FAR 13.106-2(b)(3)(ii) (specifying that evaluators may choose among a list of relevant data points or may use "any reasonable basis" to evaluate an offeror).

14

Even assuming, *arguendo*, that the evaluators did rely, in whole or in part, on the initial version of the CPAR on MTS-711, the revised CPAR still denotes significant areas of concern with Colonna's performance that would be sufficient to justify the evaluators' ratings. The revised CPAR notes that the "contractor had multiple quality issues," and that the "contractor's management team failed to execute to the requirements of the contract in multiple areas." (ECF 23-4 at 2.) Thus, even the revised version of the CPAR at issue could support the evaluators' ratings of Colonna's prior work.

Based on the letter of concern and the technical team and contracting officer's familiarity with Colonna's work from prior contracts, the Court finds that the Navy had a reasonable basis for its evaluation of Colonna's Past Performance during its review of the plaintiff's proposal.

### b.      Technical Capability

In reviewing an agency's procurement process, "the court must accord an agency's technical evaluation great deference," while also taking into account the need for "impartial, fair, and equitable" treatment of contractors. *Serco Inc. v. United States*, 81 Fed. Cl. 463, 482 (2008) (internal quotations omitted).

The plaintiff challenges the Navy's assessment of its Technical Capability. In evaluating the plaintiff's proposal, Evaluator 1 wrote: "Colonna's is capable for somethings [sic] but I feel they are not capable of giving the government quality work." (AR 379.) The second evaluator's worksheet provided:

> Colanna's [sic] does possess the technical capability to perform the work as prescribed in the YD-257 however, concerns are raised especially on Pg. 16 of their Technical Capability packet. They reference Dry Dock MILSTD 1625 C, this instruction and the requirements contained within it have been outdated since 2009. Aside from that the remaining justification appears to coincide that they are technically capable.

(AR 373.)

The plaintiff questions the thoroughness of Evaluator 1's Technical Capability review, arguing that it makes "zero reference to any particular technical issue, deficiency, apparent lack of knowledge, skill, or experience demonstrated by Plaintiff's proposal." (ECF 24 at 19.) Evaluator 1's evaluation worksheet also omits any narrative rating of Lyon's proposal. (AR 380.)

The Court recognizes that Evaluator 1's narrative statement, or lack thereof in the case of Lyon, does not provide abundant information to assist the Court in determining in which ways Colonna's proposal was found lacking. If that evaluation were the only assessment in the administrative record, the plaintiff might be able to sustain its complaint, but the record is not so barren. The PADF, which reflected the analysis of the technical team and contracting officer,

compared both offerors in greater detail and provides a more meaningful explanation of the Navy's Technical Capability assessment. (AR 404-06.)

The PADF primarily faults Colonna's for the outdated dry dock certification listed in its proposal, finding that "providing outdated instruction and requirements in response to the solicitation" could increase the risk of "unsuccessful contract performance." (AR 406.) Apart from the dry dock certification, the PADF otherwise found that "Colonna's proposal meets the requirements and indicates an adequate approach and understanding of the requirements." (*Id.*) The PADF's assessment that Colonna's met the requirements suggests that the Navy did not ultimately have decisive, or even significant, concerns with the weaknesses identified in Colonna's Technical Capability. Indeed, the PADF's favorable assessment of Colonna's Technical Capability further suggests that the Navy did not act in bad faith by providing Colonna's with an unduly negative evaluation.

The PADF reflects that, rather than relying solely upon any "technical issues" or "deficiency" in Colonna's Technical Capability, the Navy based its decision on the numerous strengths of Lyon's proposal that the Navy viewed as providing a superior ability to meet the requirements of the procurement. The PADF identified multiple areas in which Lyon excelled in Technical Capability. Lyon met standards for "safety, quality, and proper shipyard practices"; offered "specialty mechanics onsite at all times" to assist when needed for "quality oversight"; and employed "qualified" individuals "in their [Quality Assurance] and Paint Departments." (AR 405-06.) These strengths outweighed the strengths of Colonna's proposal. (*Id.*)

Because the Navy documented numerous strengths related to Lyon's capability in comparison to its evaluation of Colonna's, the Court finds that the Navy documented its reasoning for rating Colonna's Technical Capability as "Acceptable" and Lyon's as "Good." The Navy supported its best-value tradeoff by documenting its finding that Lyon made a stronger showing of Technical Capability.

The plaintiff also argues that a typographical error unduly colored the Navy's review of its proposal. Colonna's proposal, in providing a sampling of its qualifications and certifications, advertised that the company has a "Certified Dry Dock to Mil-Standard 1625C." (AR 786.) The plaintiff recognizes in its briefing that "the current accepted Dry Dock MIL-STD is no longer MIL-STD 1625C but MIL-STD 1625D; the certification having been updated in 2009." (ECF 24 at 21.) The plaintiff argues that the Navy should have recognized the statement as an "obvious clerical error," given the plaintiff's long working relationship with the Navy and the contracting officer's knowledge that Colonna's in fact is certified to the 1625D standard. (*Id.*)

While it is possible that Navy evaluators may have been able to recognize the error through a careful comparison of the plaintiff's proposal with the Navy's institutional awareness of the plaintiff's facilities, the plaintiff demands too much of the agency. The Navy had familiarity with, not intimate knowledge of, the plaintiff's facilities. It was by no means required to scrutinize the plaintiff's proposal to discern errors the plaintiff itself could have easily avoided through careful proofreading.

16

FAR Part 13 places no requirement on a contracting officer to seek clarification of errors in an offeror's proposal. *See* FAR Part 13; *cf.* FAR 14.407-1 (making clarification mandatory for sealed bidding: "[in] cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer *shall* request from the bidder a verification of the bid, calling attention to the suspected mistake") (emphasis added); FAR 15.306(a)(2) (granting contracting officers discretion to seek clarification: "offerors *may* be given the opportunity to clarify . . . or to resolve minor or clerical errors") (emphasis added). Moreover, the solicitation advised offerors that the Navy intended to award the contract without discussions; each offeror had to "submit its most favorable terms" in its initial proposal. (AR 55-56.) The plaintiff was thus on notice that it would not have an opportunity for discussions, and it was incumbent upon the offeror to submit an accurate proposal.

The record substantiates the technical team's and contracting officer's Past Performance and Technical Capability ratings of the plaintiff's proposal. The record does not sustain the plaintiff's efforts to point to any significant errors in the Navy's review of its proposal, and the Court finds that the Navy arrived at a rational basis for its award based on the reasonable evaluation it conducted of the two proposals.

### c.   Transparency: Discussions and Documentation

The plaintiff makes two additional arguments that, at their core, concern the transparency of the Navy's decision-making process. Colonna's challenges both the Navy's decision to contact Lyon during the market-research phase of the procurement and its documentation of its best-value tradeoff.

The Navy chose to contact Lyon not as a means of opening discussions but as part of its market research. (AR 17.) The defendant contacted more than one potential offeror during its market research—as noted previously, the Navy also reached out to Fairlead Boatworks Inc., though it received no response. (*Id.*) "[I]n in the context of a government contract proposal, the term 'discussions' has a specific legal definition: 'discussions involve negotiations' and 'are undertaken with the intent of allowing the offeror to revise its proposal.'" *Galen Med. Assocs., Inc., v. United States*, 369 F.3d 1324, 1332 (Fed. Cir. 2004), quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1321 (2003). No such discussions occurred as part of the Navy's market research. The Navy's choice to contact two potential offerors as part of efforts to ascertain available commercial vendors was a preliminary step before it even solicited offers, and, of course, before it reviewed any submitted bids. Moreover, any contact with Lyon during market research cannot have prejudiced Colonna's when it puts forth no evidence of an improper exchange of information. The plaintiff's implication that prejudice arose from the Navy's contact with Lyon ignores the applicable precedent granting agencies broad discretion to determine their requirements.

The Court also rejects the plaintiff's assertion that the record provides insufficient documentation justifying the award to Lyon given that the Navy chose a higher-priced proposal. The plaintiff cites to FAR Part 15, which requires agencies to document thoroughly a best-value tradeoff to ensure that the "perceived benefits of the higher priced proposal [ ] merit the additional cost." FAR 15.101-1. It also cites to *Serco, Inc.*, and *FirstLine Transportation* to

support its argument that agencies must meaningfully compare offerors and provide more analysis than conclusive assertions in two-sentence paragraphs. *See Serco, Inc.*, 81 Fed. Cl. at 497; *see also FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 380 (2011). While these cases analyze documentation requirements for a best-value tradeoff under FAR Part 15, the Court has held, *supra* III.B, that the Navy was justified in conducting this procurement under FAR Subpart 13.5 and using SAP. Therefore, FAR Part 15 does not apply to this procurement, unless the agency had specifically invoked portions of it; the Navy needed only to satisfy FAR Part 13. *See* FAR 13.106-2(b)(1) ("The procedures prescribed in parts 14 and 15 are not mandatory.") As a result, cases applying the requirements of FAR Part 15 are themselves inapplicable to this procurement.

FAR 13.501(b) sets forth the documentation requirements for procurement awards under SAP. As the court noted in *Seaborn*, an agency "substantially complies with the requirements of FAR § 13.501(b)[ ] by identifying the procedures used in awarding the contract, the number of offers received, and the basis for the award (as 'in the best interest of the government') . . . ." *Seaborn*, 55 Fed. Cl. at 525. The Navy made clear in its RFP that it valued non-price factors over the price of an offeror's proposal. (AR 56.) The Navy also complied with the RFP's stated tradeoff scheme in analyzing the offerors' proposals. (*See* AR 407 (determining that Lyon's proposal presented the better value despite the higher cost).) Because "a court must accord considerable deference to an agency's best-value decision in trading off price with other factors," *Serco*, 81 Fed. Cl. at 496, the Court finds that the plaintiff has not met its burden in showing that the Navy was required to engage in further analysis or follow any additional documentation procedures under SAP in making its award.

## C.      Count II: Bad Faith

In Count II of its complaint, the plaintiff invokes the Court's jurisdiction under 28 U.S.C. § 1491(b) under an implied-in-fact contract theory to argue that the Navy acted in bad faith in reviewing its proposal.

Government officials are traditionally presumed to have acted in good faith. *Galen*, 369 F.3d at 1335. To overcome the presumption of good faith, a protestor must put forth nearly "irrefragable proof" to satisfy the "clear and convincing evidence" standard. *Id.* at 1330. Such proof "'has been equated with evidence of some specific intent to injure the plaintiff.'" *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (quoting *Kalvar Corp., Inc. v. United States*, 211 Ct. Cl. 192, 198-99 (1976)).

The plaintiff has failed to provide evidence that the Navy acted in bad faith. The plaintiff suggested at oral argument that there is "no smoking gun" in terms of an easily identifiable, specific instance of bad faith on the part of the Navy; rather, the plaintiff argues, the record on the whole reveals a pattern of intentional acts meant to prevent award of the contract to the plaintiff. The Court finds, contrary to the plaintiff's assertions, that the record reveals no such evidence.

First, the Court notes that the worksheets completed by the evaluation team corresponded to other indicators in the record of the plaintiff's performance. Both the corrected CPAR and the

letter of concern issued to Colonna's provide objective evidence outside this procurement of the plaintiff's performance issues that generally comport with the overall rating assigned to Colonna's in the PADF. Were the evaluations to differ dramatically from the remaining evidence in the record, the Court may have had grounds to question the evaluators' intent; here, however, the consistency between the evaluations and other objective performance measures suggests no intent to harm the plaintiff and no bad faith on the part of the Navy.

Second, the Court finds that the Navy did not act in bad faith when it selected a higher-priced offeror, despite the plaintiff's submission of a price 13 percent lower than that of the awardee. Procurement officials have "substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss Co.*, 77 F.3d at 449. The RFP informed prospective offerors "Past Performance is more important than Technical Capability; however, when combined are significantly more important that Cost/Price." (AR 594.) Based on Lyon's higher adjectival ratings, the firsthand experience of the contracting officer with Colonna's work on past contracts, and the tradeoff the Navy set forth in its PADF according to criteria provided for in the RFP, the Navy found Lyon to be the best value for the government. The Court finds that the Navy had a rational basis for its best-value determination.

Colonna's puts forth no evidence to suggest a specific intent to injure the plaintiff that satisfies the clear and convincing evidence standard, and the Court's review of the record reveals no such bad faith. The Court rejects the plaintiff's bad faith claims.

### D.    Relief

The plaintiff seeks as relief "an order setting aside the award of the Contract to Awardee" and an order directing the agency to "re-procure the Contract or direct award to Plaintiff." (ECF 24 at 27.) For a court to grant injunctive relief, the plaintiff must succeed on the merits of the case. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (discussing the four-part test for injunctive relief, including a determination of whether "the plaintiff has succeeded on the merits of the case"). The plaintiff has not succeeded on the merits, so the Court is unable to award injunctive relief.

Similarly, the Court will not award the plaintiff bid preparation and proposal costs under 28 U.S.C. § 1491(b)(2). To recover costs, the plaintiff bears the burden of establishing that: (1) the agency committed a prejudicial error in conducting a procurement; (2) the error caused the protester to incur unnecessary bid preparation and proposal costs; and (3) the costs it seeks to recover were both reasonable and allocable. *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012). The plaintiff cannot do so here because it has failed to show that the Navy committed a prejudicial error in the procurement process.

## IV.    CONCLUSION

The plaintiff has failed to establish that the defendant acted in an arbitrary or capricious manner in its evaluation of proposals and award of the contract to Lyon. The Court finds that the Navy properly conducted the procurement using SAP. The record supports the agency's Past Performance and Technical Capability evaluations, and these evaluations justify the agency's

best-value tradeoff.  Because the Navy's procurement was proper and the plaintiff has put forth no evidence that the agency acted in bad faith, the plaintiff has not demonstrated success on the merits.  The Court is therefore unable provide injunctive relief or bid preparation and proposal costs. Accordingly, the Court grants the defendant's cross-motion for judgment on the administrative record under RCFC 52.1, denies the defendant's motion to dismiss under RCFC 12(b)(1) Count II of the plaintiff's complaint as it relates to an implied-in-fact contract of fair dealing, and denies the plaintiff's cross-motion for judgment on the administrative record.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

20